E. N. Brooks et al., *Appellants*, v. Harry E. Hudson et al., *Cross-appellants*, Prudential Insurance Company of America et al., *Respondents*.[1]

*Bayley & Croson*, for appellants.

*Wright, Jones & Bronson* and *W. L. Grill*, for cross-appellants.

*Roberts, Skeel & Holman, Tyre H. Hollander*, and *James Tynan*, for respondent Prudential Insurance Company of America.

*Grinstead, Laube, Laughlin & Meakim*, for respondent Seaboard Securities, Inc.

[1]Reported in 27 P. (2d) 111.

TOLMAN, J.—There is involved here, in a general way, the following state of facts, regarding which there is no dispute.

On September 1, 1927, defendants Harry E. Hudson and wife, being the owners of certain real property in the city of Seattle, executed a trust deed conveying the same to Wm. Brelle, as trustee, to secure the payment of a bond issue in the form of 320 bonds, each for the sum of five hundred dollars, the whole aggregating one hundred sixty thousand dollars, bearing interest at the rate of seven per cent per annum. Under the terms of the trust deed, the earliest maturity of any of these bonds was September 1, 1931. The trust deed was duly filed for record on September 16, 1927.

Thereafter, the plaintiffs became the purchasers for value of eleven of these bonds, aggregating fifty-five hundred dollars in par value. These bonds now held by the plaintiffs are the only remaining outstanding bonds, all of the remainder of the one hundred sixty thousand dollars in bonds having been retired. The semi-annual interest on the bonds held by the plaintiffs was duly and regularly paid as it matured until the interest payment maturing March 1, 1931. That interest payment was not made, and plaintiffs then, or soon afterwards, learned of the release of the trust deed as hereinafter set forth.

. On September 23, 1927, Hudson and wife conveyed the property to Hudson Securities Company, a corporation organized and controlled by them, subject, however, to the trust deed. On the day it thus acquired title, the Hudson Securities Company gave a mortgage on the property to Wm. Brelle to secure the payment of twenty-five thousand dollars. This mortgage was, of course, junior to the trust deed. On March 5, 1928, this mortgage was assigned to the defendant Seaboard Securities Company.

On September 11, 1928, as a part of a plan to refinance the indebtedness for which the property was then pledged, Hudson Securities Company made a mortgage on the same property to the defendant Prudential Insurance Company of America to secure the payment of one hundred thousand dollars, which mortgage was recorded on September 12, 1928, and by its terms purports to be a first mortgage on the property. Thereafter, the Seaboard Securities Company assigned the second mortgage of twenty-five thousand dollars to Wm. Brelle & Company, who proceeded to satisfy the same of record on October 2, 1928. On October 1, 1928, Wm. Brelle, as trustee under the trust deed, made and executed a satisfaction of the trust deed, reciting the full surrender and cancellation of all the bonds evidencing the one hundred sixty thousand dollars so secured, which satisfaction was duly recorded on October 2, 1928.

On October 1, 1928, Hudson Securities Company reconveyed the title to the property to defendants Hudson and wife, the deed being recorded October 15, 1928; and on that date, Hudson and wife executed and filed for record a second trust deed to Wm. Brelle, as trustee, to secure an issue of bonds aggregating ninety-five thousand dollars, that trust deed reciting that it and the bond issue secured by it were subject to a first mortgage of one hundred thousand dollars, dated September 11, 1928, running to Prudential Insurance Company of America, as mortgagee. On October 11, 1928, Hudson and wife again conveyed the title to Hudson Securities Company, subject to the first mortgage of one hundred thousand dollars and the trust deed, or second mortgage, of ninety-five thousand dollars.

On March 27, 1929, Hudson Securities Company deeded the property to Wm. Brelle Investment Company, subject to the two mortgages. On May 23, 1929,

the Seaboard Securities Company was substituted in place of Wm. Brelle as trustee in the trust deed securing the ninety-five thousand dollar bond issue; and on February 20, 1930, Wm. Brelle Investment Company conveyed the property to Seaboard Securities Company, subject only to the first mortgage to the Prudential Insurance Company of one hundred thousand dollars; and on the same day the Seaboard Securities Company, as trustee, satisfied the ninety-five thousand dollar second mortgage and gave Wm. Brelle Investment Company an option to repurchase the property.

At the time of the purported satisfaction of record of the trust deed securing the one hundred sixty thousand dollar bond issue by Wm. Brelle as trustee, none of the outstanding bonds secured by it were due, and none had been paid. Hudson and wife had not deposited any money with the trustee for the purpose of retiring those bonds or any of them, and the purpose of the one hundred thousand dollar loan from the Prudential Insurance Company of America was to refinance at a lower rate of interest this outstanding bond issue. The difference in amount between the sum realized by mortgaging to the Prudential Insurance Company and the then outstanding mortgages of one hundred sixty thousand dollars and twenty-five thousand dollars, it was planned should be made up out of the proceeds of the new second bond issue of ninety-five thousand dollars secured by the trust deed of October 15, 1928.

When payment of the semi-annual interest due on plaintiffs' bonds was refused in March, 1931, an investigation was had, the bond holders learned for the first time that Brelle as trustee had executed and delivered a satisfaction of the trust deed securing their bonds, and shortly thereafter this action was brought,

originally, for the purpose of obtaining a judgment against Hudson and wife on the bonds, but a cross-complaint was filed followed by amendment of the complaint and the bringing in of additional parties, so that the plaintiffs thus sought to have reinstated the trust deed of September 1, 1927, securing their bonds, and to have the same foreclosed, and also asked for personal judgment against the defendants Hudson.

The trial court gave them judgment against the Hudsons for the amount due upon their bonds, but refused to reinstate and foreclose the trust deed. Plaintiffs have appealed from that part of the judgment refusing to reinstate and foreclose. the trust deed, and the defendants Hudson have cross-appealed from the personal judgment against them. We will first consider the issues raised by the plaintiff's appeal.

The bonds are all in the same form, and each recites that it is secured by a "First Mortgage Deed of Trust," which fact is also recited in the trustee's certificate endorsed thereon. Thus it appears that any one purchasing a bond was at once advised as to the source of his rights, and provided with means of ascertaining the extent of them. The trust deed being of record, those dealing with the bonds were thus given constructive notice of all of its terms, and each must be held to be bound thereby.

The trust deed here involved has some features which to us are new and unusual. Section 2 of Article II recites that all of the bonds have been purchased for investment or resale by Wm. Brelle & Co., Inc., and

". . . that in case at any time said Wm. Brelle & Co., Inc. or any person, firm, or corporation which may succeed to its business, shall pay, out of its individual funds to the holder or holders of any bonds or coupons, the amount or amounts due thereon, such bonds or coupons shall thereupon be deemed to have been purchased by said corporation, or its successor in

business, as the case may be, and shall be delivered uncanceled to them or it, and shall become and be the property of said corporation, its successor in business, respectively, and it shall be unnecessary to give notice of any such purchase to the holders of other bonds or coupons secured hereby, or to anyone else, and no payment for such bonds or coupons under the provisions hereof shall be considered as a voluntary payment by said corporation, or its successor in business, for the benefit of the mortgagor, or for the benefit of any other holder of bonds or coupons outstanding hereunder, nor shall any such payment have the effect to pay or retire the bonds or coupons for which payment is so made, or in any way impair the security given by this indenture in respect to the same.''

Section 4 of the same article provides that the bonds or any of them may be retired before maturity at any interest payment date,

'' . . . provided at least thirty (30) days prior to the date fixed for redemption, the mortgagor shall (1) deliver to the trustee written notice of the intention so to redeem and repay and of the aggregate amount of the par value of bonds so to be redeemed; (2) deposit with the trustee an amount of money sufficient to pay the cost of publishing and mailing the notice hereinafter in this section provided for, and (3) deposit with said Wm. Brelle & Co., Inc. the full amount of the principal of the bonds so to be redeemed and all interest to accrue thereon to the date of such redemption and not theretofore deposited under the provisions of Section 1 of this ·Article, together with the amount payable on account of said federal income taxes, as hereinabove provided, and together with a premium of two (2) per cent of the principal of the bonds to be redeemed.''

By a subsequent section, the trustee is made the· representative of the bond holders.

''It is covenanted and agreed that in all actions, or proceedings or dealings or transactions in any way affecting or relating to this indenture, or to the

252

premises or to the property covered by the lien of this indenture, or any part thereof, or the title thereto, the Trustee shall be deemed the representative of the bondholders, and in no case shall it be necessary to notify any bondholder or to make any bondholder a party to any action, suit or proceeding for the purpose of binding or concluding him.''

Again, and perhaps most important of all, is the following provision:

''If the mortgagor shall promptly pay, or cause to be paid, the full amount of said bonds with interest thereon as the same shall respectively mature, in the manner provided for in this indenture and in said bonds and coupons, and shall also pay all other sums payable hereunder by the mortgagors, and shall have kept and performed all the things required of him herein, all the premises shall revert to the mortgagor and the estate, right, title, and interest of the Trustee thereupon shall cease, determine and become void, and the Trustee, on demand of the mortgagor, but at the mortgagor's cost and expense, shall prepare and execute proper instruments releasing, satisfying and discharging the lien of this indenture. Such instruments shall be valid and effectual, in law, whether executed and delivered before or after maturity of said bonds and without the necessity of and regardless of the production, surrender or delivery or cancellation of any of said bonds.

''The Trustee shall not be liable for any release or releases improvidently executed by him in supposed compliance with the terms of this indenture, but any such release or releases which may be executed by the said Trustee, where the mortgagor shall not be entitled to receive the same, shall, as against the mortgagor, be null and void and of no effect.''

With this situation shown of record, and with no knowledge of any outstanding unpaid bond, it would seem clear that legally, under the terms of the recording act, and equitably, under the rule of comparative innocence, subsequent encumbrancers and purchasers,

in good faith and for a value (in which class both the Prudential Insurance Company and the Seaboard Securities Company fall), take title free and clear of any claim of the bond holders. It is true that the bonds were not yet due, but if that fact was sufficient to put one dealing with the property on notice, the trust deed at once answered such inquiry by revealing that the trustee was the representative of the bond holders, with power to bind them, and that his release of the trust deed, even though made before maturity and without the production or cancellation of any of the bonds, was binding upon everyone except only the mortgagors. To require further inquiry and a search of the securities markets for outstanding bonds, would be to demand the impossible and to disregard the clear provisions of the trust deed, from which alone plaintiffs can claim any rights.

Many of our cases are cited pro and con upon this question, but none of them in any wise announces a doctrine contrary to that herein expressed; and most, if not all, of the cases cited, when the facts are duly considered, tend strongly to support these views. A review of these cases would make the law no plainer, and a further review of incidental facts would tend toward confusion rather than otherwise. We conclude that, upon the plaintiffs' appeal, the judgment must be affirmed.

The cross-appeal by the defendants Hudson raises the question of whether, as to them, the outstanding bonds of the first issue in the hands of the plaintiffs are paid. It seems to be admitted that, at the time of the refinancing, as hereinbefore detailed, Wm. Brelle & Company had agreed to take the ninety-five thousand dollar second issue of bonds and to provide therefrom for the retirement of all liens against the property prior in time to the Prudential mortgage

and in excess of the amount to be realized from that mortgage. It is also admitted that Wm. Brelle & Company then owned something like $93,500 of the first issue of bonds, leaving outstanding in the hands of the investing public only the sum of $66,500 of those bonds. Admittedly, the defendants Hudson paid no money at any time to the trustee or to Wm. Brelle & Company for the retirement of any bond.

Since § 2 of Article II of the trust deed, hereinbefore quoted, clearly recognizes Wm. Brelle & Company as a dealer, investor or broker in such bonds, and provides expressly that bonds acquired by it shall not be deemed paid or retired, this situation of itself means nothing.

Of the one hundred thousand dollars represented by the Prudential mortgage, a certain sum went to cover commission and expenses, and there remained to be paid over at the time of closing but $97,871.55 in the hands of the escrow agent appointed by the Hudsons and Brelle to close the transaction. Out of this sum was paid the balance due on the twenty-five thousand dollar second mortgage, and the residue of $71,819.60 came into the hands of Wm. Brelle & Company.

It seems to be argued that, notwithstanding the provisions of the trust deed, without any action or demand on the part of the Hudsons, Wm. Brelle & Company were, by reason of the situation and their agreement with the Hudsons to complete the refinancing, bound to use this money to retire the bonds which were in the hands of the public to the exclusion of the bonds held by it. No doubt that should have been done, and perhaps Wm. Brelle & Company are liable to the Hudsons for not so performing, but the fact remains that Wm. Brelle & Company did not so perform its duty, chiefly, no doubt, because the $93,500 in bonds owned by it were pledged and deposited as collateral for loans

made to it, and could be taken up and cancelled only by the payment of money. As there was one hundred sixty thousand dollars in bonds to be retired, and those bonds could only be retired by the payment of money as provided in § 4 of Article II of the trust deed, hereinbefore quoted, and as the Hudsons provided less than seventy-two thousand dollars to meet a payment which required more than one hundred sixty thousand dollars, it cannot be held that the Hudsons have performed their obligations under the trust deed, and therefore plaintiffs' bonds have not been paid.

The judgment of the trial court is affirmed on both appeals.

BEALS, C. J., HOLCOMB, BLAKE, and GERAGHTY, JJ., concur.